UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

JUN 08 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-378-GWU

CLARENCE YOUNG, JR.,                                      PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.    See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

Young

reasonable mind might accept as adequate to support a conclusion. . ." <u>Wright v.</u>
<u>Massanari</u>, 321 F.3d 611, 614 (6th Cir. 2003) <u>(quoting</u> <u>Kirk v. Secretary of Health</u>
<u>and Human Services</u>, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record
as a whole and must take into account whatever in the record fairly detracts from
its weight. <u>Garner</u>, 745 F.2d at 387.

     One of the detracting factors in the administrative decision may be the fact
that the Commissioner has improperly failed to accord greater weight to a treating
physician than to a doctor to whom the plaintiff was sent for the purpose of
gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654,
656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion
is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and</u>
<u>Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968,
973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on
the trier of fact only if they are not contradicted by substantial evidence to the
contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long
been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

     Another point to keep in mind is the standard by which the Commissioner
may assess allegations of pain. Consideration should be given to all the plaintiff's
symptoms including pain, and the extent to which signs and findings confirm these

3

Young

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's

allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

6

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Clarence Young Jr., was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of bilateral shoulder pain (status post surgery on the left), an umbilical hernia, post-traumatic stress disorder (per history-- in partial remission), and a moderate dysthymic disorder. (Tr. 15). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Young retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 15- 20). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 51 years, work experience, and GED education could perform any jobs if he were limited to light level exertion, and also had the following non-

7

Young

exertional impairments. (Tr. 283). He: (1) could occasionally kneel, crouch, climb stairs, and reach overhead; (2) needed to avoid crawling, stooping, or climbing ladders, ropes, or scaffolds; (3) needed to avoid exposure to vibration or extreme cold; and (4) retained the ability to understand and complete simple, 1-2 step work tasks and instructions in an object-focused, routine work setting. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 284).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Young alleged disability both due to nervousness and to physical problems, particularly his shoulders. (Tr. 54). He had injured his left shoulder in 1998 and had rotator cuff surgery, but felt that this was not helpful. (Tr. 272). Since surgery in the left shoulder was unsuccessful, he was reluctant to have it done in the right shoulder. (Tr. 274). He testified that he was unable to reach overhead with either arm, and only to a limited degree from side to side. (Tr. 273).

Hospitalization records show that Dr. Ben Kibler performed arthroscopic surgery on Mr. Young's left shoulder in April, 1998, and noted a "marked amount of

8

impingement" as well as spurring. (Tr. 115). After the surgery, in October, 1998, Dr. Kibler admitted that Mr. Young continued to have soreness and tenderness in the joint with grinding and catching on full range of motion. (Tr. 259). He felt that Mr. Young's prognosis for return to unrestricted work was "guarded." (Id.).

Dr. Timothy Scott Prince conducted a consultative physical examination for worker's compensation purposes in November, 1998. Mr. Young stated that his pain and range of motion were essentially unchanged after the surgery, and he had difficulty reaching with his arm to drive, but managed to do so. (Tr. 255). His testing was brief, and did not include a review of imaging studies, but Dr. Prince did find some tenderness in the left shoulder and reduced range of motion and reduced left grip. (Tr. 256). He felt that the plaintiff could not return to his former job which involves heavy lifting, but would be able to perform jobs requiring lifting of 30 pounds maximum and frequent lifting or carrying 20 pounds, no lifting, pushing, or pulling at shoulder level or above with the right arm, no lifting, carrying, pushing, or pulling over five pounds with the right arm in any position, and no use of vibratory tools in the right hand. (Tr. 254).[1]

---

[1]Since the plaintiff's complaints to Dr. Prince did specify that it was the left shoulder that had had surgery, and since the physician had mentioned this in the body of his report, presumably the reference to restrictions on using the right arm was simply an error.

9

Young

Subsequently, Mr. Young was examined by Dr. Bobby J. Kidd on May 20, 2003. (Tr. 133). The plaintiff gave his history of rotator cuff injury in both shoulders with surgical repair of the left with no improvement afterwards. (Id.). He also described high blood pressure. Dr. Kidd's examination showed elevated blood pressure, at 144/94, but the funduscopec examination was normal. (Id.). Dr. Kidd also noted a large umbilical hernia. (Tr. 135). He felt that both of the plaintiff's shoulders were non-tender, but he was only able to abduct both shoulders to 45 degrees which was described as "just half [way] to parallel with the floor." (Tr. 136). Crepitus was also noted in the right shoulder. (Id.). Dr. Kidd did not provide any functional restrictions, but two state agency physicians reviewed the evidence and gave opinions. Dr. Gary Higgason completed his report on June 2, 2003 and limited the plaintiff to light level exertion, never balancing, occasionally crawling, and having limited reaching. (Tr. 196-8). He specified under the section of the form concerning the reaching limitations that there should be "no overhead [reaching] either arm." (Tr. 198). He also restricted the plaintiff from concentrated exposure to vibration. (Tr. 200). He felt that the plaintiff's alleged difficulty with lifting and reaching was "somewhat supported by the objective data and is partially credible." (Tr. 201).

A second reviewer, Dr. S. Muckherjee, also reviewed the evidence and found slightly higher restrictions. Dr. Muckherjee concluded that Mr. Young was capable

of light exertion, had limited ability to push or pull with both the upper and lower extremities, due to the pressure on his umbilical hernia, could never climb ladders, ropes, or scaffolds, stoop, or crawl, could occasionally climb ramps and stairs, kneel, and crouch, was totally restricted from reaching overhead, and needed to avoid exposure to extreme cold and vibration. (Tr. 242-9). This physician opined that the plaintiff's complaints were reasonable. (Tr. 247).

Therefore, both of the recent physicians who gave an opinion, Doctors Higgason and Muckherjee, placed total restrictions on work overhead, in contrast to the ALJ's finding that the plaintiff could reach overhead "occasionally." (Tr. 18). Social Security Ruling 85-15 points out that reaching is an activity "required in almost all jobs [and] significant limitations of reaching or handling . . . may eliminate a large number of occupations a person could otherwise do." SSR 85-15, p. 7. The Ruling further indicates that the assistance of a vocational expert may be necessary to determine the effects of varying degrees of limitations. Id.

In the present case, the restrictions given by the state agency examiners after the most recent physical examination included a more severe restriction on reaching overhead than was considered by the VE. Therefore, a remand will be necessary in order to determine the effect of this restriction on the occupational base. While the restrictions given in Dr. Prince's 1998 report were put to the VE, who answered

11

Young

that there were the sedentary level jobs the person could perform (Tr. 284-5), these restrictions were clearly out of date, since Dr. Prince was focused only on the plaintiff's left arm and shoulder in his examination, and subsequent evidence showed that the plaintiff had bilateral shoulder problems.

The Court also notes that the mental limitations given in the hypothetical question did not follow the language given by the state agency psychological reviewers (Tr. 204-6, 223-5), and no rationale was provided for ignoring their findings. See 20 C.F.R. Section 416.927(f)(2)(i). The ALJ also did not include limitations on dealing with the general public given by the psychological examiner, Dr. Gary Maryman. (Tr. 142).

The decision will be remanded for further consideration.

This the ___8___ day of June, 2005.

G. WIX UNTHANK
SENIOR JUDGE

12